# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

TONI MARIE WYCOFF,

     *Plaintiff,*

vs.

NANCY A. BERRYHILL, ACTING
COMMISSIONER OF THE SOCIAL
SECURITY ADMINISTRATION,

     *Defendant.*

§
§
§
§
§
§
§
§
§
§
§
§
§

NO. 4:18-CV-885

## <u>MEMORANDUM AND ORDER</u>
## <u>ON CROSS MOTIONS FOR SUMMARY JUDGMENT</u>

Plaintiff Toni Marie Wycoff ("Ms. Wycoff" or "Plaintiff") sought review of the denial of her request for disability and disability insurance benefits under Title II of the Social Security Act ("the Act"). ECF No. 1. The Parties consented to have this Court conduct all proceedings in this matter pursuant to 28 U.S.C. § 636(c), ECF Nos. 8-10, and filed cross-motions for summary judgment, ECF Nos. 12-14.[1] Based on the briefing and the record, the Court **DENIES** Plaintiff's motion, **GRANTS** the Commissioner of the Social Security Administration's ("Commissioner") motion, and **DISMISSES** the action **with prejudice**.

---

[1] Plaintiff filed a reply. ECF No. 15.

# I.
## BACKGROUND

Plaintiff is a 61-year-old woman. R. 34. Plaintiff worked at Shell for over twenty years until 2012, first as an administrative assistant and then as a paralegal. R. 29-30, 179. Thereafter, until 2014, she worked as a tax preparer, paralegal at a law firm, and mail handler for the United States Postal Service. R. 179.

On January 16, 2015, Ms. Wycoff filed an application under Title II seeking benefits beginning on June 12, 2014 based on chronic back pain, right lumbar radiculitis, lumbar facet arthropathy, bilateral hand numbness, carpal tunnel syndrome, and shortness of breath.[2] R. 134, 177. On April 1, 2015, the Commissioner denied her claim. R. 76. On April 23, 2015, Plaintiff requested reconsideration of her claim. R. 83. On June 5, 2015, the Commissioner again denied her claim. R. 85. On June 15, 2015, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). R. 88. ALJ Daniel Whitney conducted a hearing on November 7, 2016. R. 25-55. Plaintiff and Vickie Colenburg, a vocational expert ("VE"), testified. R. 13, 29, 33, 51. On December 28, 2016, the ALJ denied Ms. Wycoff's application for benefits.[3] R. 13-20.

---

[2] The relevant time period is June 14, 2014—Plaintiff's alleged onset date—through December 31, 2019—Plaintiff's last insured date. R. 13. The Court will consider medical evidence that pre-dates this period to the extent it demonstrates whether Plaintiff was under a disability during the relevant time frame. *See Williams v. Colvin*, 575 F. App'x 350, 354 (5th Cir. 2014).

[3] The ALJ determined Ms. Wycoff was not disabled at Step Four. R. 18-20. At Step Two, the ALJ found Plaintiff has the following medically determinable and severe impairments: obesity, carpal

On February 4, 2017, Ms. Wycoff requested the Appeals Council to review the ALJ's decision. R. 132. On February 22, 2018, the Appeals Council denied Plaintiff's request for review. R. 1-3; *see Sims v. Apfel*, 530 U.S. 103, 106 (2000) (explaining that when the Appeals Council denies the request for review, the ALJ's opinion becomes the final decision). On March 20, 2018, Ms. Wycoff filed this civil action. ECF No. 1.

## II.
## STANDARD OF REVIEW

The Social Security Act provides for district court review of any final decision of the Commissioner that was made after a hearing in which the claimant was a party. 42 U.S.C. § 405(g). In performing that review:

> The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner …, with or without remanding the cause for a rehearing. The findings of the Commissioner … as to any facts, if supported by substantial evidence, shall be conclusive ….

---

tunnel syndrome, and degenerative disc disease. R. 15. He also found she has a history of pulmonary embolism, but that it is not severe. R. 15. At Step Three, the ALJ found these impairments or combination of impairments do not rise to the level of severity of the impairments in Listings 1.02 and 1.04 or Social Security Ruling 02-1p. R. 15-16. The ALJ found Plaintiff has the residual functional capacity ("RFC") to perform light work, except she is limited to sitting six hours in an eight-hour work day; standing and walking six hours in an eight-hour work day; occasionally lifting 20 pounds; frequently lifting 10 pounds; no climbing of ladders, ropes, or scaffolds; occasionally stooping and crouching; and frequent handling and fingering. R. 16-18. At Step Four, the ALJ found that Plaintiff is capable of performing her past relevant work as a clerk, paralegal, or administrative assistant. R. 18-20. Alternatively, even if her exertional level in the RFC were reduced to sedentary, Plaintiff could still perform other jobs as an appointment clerk, receptionist, or information clerk. R. 19-20.

*Id.* Judicial review of the Commissioner's decision denying benefits is limited to determining whether that decision is supported by substantial evidence and whether the proper legal standards were applied. *Id.*; *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). "Substantial evidence" means "relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000). It is "more than a scintilla but less than a preponderance." *Id.*

A reviewing court may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute its judgment for that of the Commissioner, even if the evidence preponderates against the Commissioner's decision. *Brown v. Apfel*, 192 F.3d 492, 496 (5th Cir. 1999). Even so, judicial review must not be "so obsequious as to be meaningless." *Id.* (internal quotation marks and citation omitted). The "substantial evidence" standard is not a rubber stamp for the Commissioner's decision and involves more than a search for evidence supporting the Commissioner's findings. *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985); *Singletary v. Brown*, 798 F.2d 818, 822-23 (5th Cir. 1986). Rather, a reviewing court must scrutinize the record as a whole, taking into account whatever fairly detracts from the substantiality of evidence supporting the Commissioner's findings. *Id.* A court "may affirm only on the grounds that the Commissioner stated for [the] decision." *Copeland v. Colvin*, 771 F.3d 920, 923 (5th Cir. 2014).

# III.
## ANALYSIS OF PLAINTIFF'S CHALLENGES TO THE ALJ'S DECISION

Plaintiff argued (1) the ALJ failed to incorporate Plaintiff's reduced bilateral manual dexterity in the formulation of Plaintiff's RFC; (2) the ALJ failed to properly develop the record by not obtaining an updated medical opinion; (3) the ALJ failed to properly develop the record by not ordering a consultative examination; (4) the ALJ failed to consider the non-exertional impairment of pain; (5) the ALJ failed to conduct a meaningful evaluation of Plaintiff's credibility; (6) the ALJ failed to incorporate all of Plaintiff's medically determinable impairments into Plaintiff's RFC and into its hypothetical questions to the VE. ECF No. 12 at 5-10.

### A. The ALJ Properly Considered Plaintiff's Hand Impairments.

Plaintiff argued that the ALJ failed to account for her reduced bilateral manual dexterity in formulating the RFC, and that the limitation to "frequent handling and fingering" does not adequately reflect this limitation. ECF No. 12 at 5-6.

"The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Dismuke v. Colvin*, No. 3:14-CV-1175, 2015 WL 464397, at *4 (N.D. Tex. Jan. 8, 2015) (citing *Morris v. Bowen*, 864 F.2d 333, 336 (5th Cir. 1988)), *report and recommendation adopted*, 2015 WL 481384 (N.D. Tex. Feb. 4, 2015). The ALJ found Plaintiff has severe carpal tunnel syndrome, but did not find her statements about the intensity, persistence, and limiting effects of her symptoms to be entirely consistent with the evidence. R. 17. The ALJ even departed

from the findings of the state agency medical consultants ("SAMCs").[4] He found

Plaintiff had severe carpal tunnel syndrome and other severe impairments which the

SAMCs did not recognize as either severe or even non-severe impairments. R. 15.

As the ALJ explained, Plaintiff's doctors recommended physical therapy for

her spinal impairments, and injections and surgery for her carpal tunnel syndrome.[5]

However, Plaintiff did not pursue these options. This suggest her impairments are

not of the severity she alleged.[6] Furthermore, while Plaintiff was diagnosed with

---

[4] At the initial level, the SAMC, Dr. Andrea Fritz, found Plaintiff had two severe medically determinable impairments: a spine disorder and obesity. R. 59. She found one or more of Plaintiff's medically determinable impairments could be expected to produce the alleged pain and symptoms, but that Plaintiff's statements about intensity, persistence, and functionally limiting effects were not substantiated by medical evidence alone and that Plaintiff was partially credible. R. 59. She found Plaintiff could perform her past relevant work as a paralegal. R. 62. She found Plaintiff had exertional limitations of occasionally lifting 20 pounds, frequently lifting 10 pounds, standing and walking six hours in an eight-hour work day, sitting six hours in an eight-hour work day, and unlimited ability to push and pull. R. 60. She found Plaintiff has postural limitations including occasional climbing of ladders, ropes, and scaffolds; occasionally stooping, kneeling, crouching, and crawling; and unlimited ability to balance and climb ramps and stairs. R. 60. She found Plaintiff had no manipulative, visual, communicative, or environmental limitations. R. 60-61. At the reconsideration level, Dr. Betty Santiago largely affirmed these findings, with the exception that she found Plaintiff had manipulative limitations, including limited handling and feeling in the right hand, but unlimited ability to reach and finger. R. 70.

[5] July 9, 2014 (R. 321); May 4, 2015 (R. 445); Nov. 7, 2016 (R. 42); *see also* Sept. 23, 2013 (R. 274).

[6] *See, e.g.*, *Milligan v. Colvin*, No. 3:14-CV-868, 2014 WL 7028038, at *8 (N.D. Tex. Dec. 12, 2014) (ALJ was not precluded from finding that noncompliance with prescribed treatment undermined the claimant's credibility), *report and recommendation adopted*, No. 3:14-CV-868 (N.D. Tex. Dec. 12, 2014), ECF No. 15; *Petticrew v. Colvin*, No. 4:13-CV-2119, 2014 WL 2880019, at *9 (S.D. Tex. June 23, 2014) ("A claimant's non-compliance with treatment is a proper factor for the ALJ to consider in assessing credibility.") (citing *Villa v. Sullivan*, 895 F.2d 1019, 1024 (5th Cir. 1990)); *see also Simoneaux v. Astrue*, No. 9-326-CN, 2010 WL 3717291, at *5 (M.D. La. Sept. 9, 2010) (where claimant did not seek or receive pain management or pain medication stronger than ibuprofen, this indicates her pain is not of the severity she alleged).

carpal tunnel syndrome and diagnostic testing confirmed this, several of her physical examinations pertaining to her wrist were essentially normal.[7] *See Daniels-Davis v. Comm'r of Soc. Sec.*, No. 6:12-CV-863, 2014 WL 3955617, at *6-7 (E.D. Tex. Aug. 12, 2014) (limiting claimant to frequent, but not constant, handling and fingering sufficiently incorporated limitations due to arthritis and carpal tunnel syndrome where some of her treatment records showed she had normal grip strength and motor function).[8] Physical examinations revealed some weakness and diminished sensation in her hand on only one occasion.[9]

### B. The ALJ Was Not Required To Obtain An Updated Medical Expert Opinion.

Plaintiff argued that the ALJ should have obtained an updated medical opinion because there was no opinion from her treating doctors, some treatment records post-

---

[7] June 17, 2014 (R. 307-08) (completely normal physical examination; 5/5 motor strength in musculoskeletal system); July 9, 2014 (R. 319-20) (normal range of motion and no pain in wrist); Apr. 3, 2015 (R. 437) (completely normal physical examination; normal range of motion, 5/5 motor strength, and no tenderness or fasciculations in musculoskeletal system); May 4, 2015 (R. 445) (full range of motion of elbow, forearm and wrist without instability; negative Tinel's); Aug. 13, 2015 (R. 844) (normal range of motion in musculoskeletal system); Dec. 11, 2015 (R. 853) (5/5 motor strength bilaterally; normal deep tendon reflexes; no fasciculations).

[8] *See also Simoneaux*, 2010 WL 3717291, at *4-6 (ALJ did not err in limiting claimant with arthritis in her hands to frequent handling and fingering because there was sufficient evidence in the record to support "frequent" use, including that claimant could dress herself, drive, and prepare breakfast). While the ALJ here did not rely on Plaintiff's activities of daily living, the Court notes that Plaintiff was able to handle some of her activities of daily living including preparing simple meals, driving, going grocery shopping, and spending time with friends. R. 197-99. In addition, on the few occasions where doctors asked her about her activities of daily living, she reported she was able to handle them independently. R. 260 (July 2, 2013); 317 (July 9, 2014).

[9] May 4, 2015 (R. 445).

dated the SAMCs' opinions, and to address medical equivalence and the RFC. ECF No. 12 at 6-7.

### 1. The ALJ's duty to develop the record.

"The obligation to develop the record 'is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence.'" *Case v. Colvin*, No. 7:13-CV-11, 2014 WL 4386736, at *6 (N.D. Tex. Sept. 4, 2014) (quoting *Thompson v. Colvin*, No. 4:12-CV-466, 2013 WL 4035229, at *6 (N.D. Tex. Aug. 8, 2013)). "The absence of a medical source statement about a plaintiff's ability to work does not, by itself, make the record incomplete." *Kirkwood v. Colvin*, No. 2:14-CV-191, 2015 WL 5714575, at *17 (S.D. Tex. Aug. 19, 2015) (citing *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995)), *report and recommendation adopted*, 2015 WL 5714591 (S.D. Tex. Sept. 29, 2015). The issue is whether there is nevertheless substantial evidence in the record supporting the ALJ's decision. *Id*. Even if the ALJ should have developed the record further, reversal is appropriate only if the plaintiff can show she was prejudiced by this failure. *Id*. (citing *Brock v. Chater*, 84 F.3d 726, 728 (5th Cir. 1996)).

### 2. Substantial evidence supports the ALJ's decision.

The Court finds there was substantial evidence in the record supporting the ALJ's decision. While there was no statement by any treating or examining source, there was sufficient evidence from which the ALJ was able to make a disability

determination, including Plaintiff's medical records,[10] Plaintiff's and the VE's testimony, and opinions of two SAMCs, who both found Plaintiff was not disabled. *See id.* at \*18 (even without examining or treating doctors' opinions, non-examining SAMCs' opinions, medical treatment records, Plaintiff's reports, and testimony constituted substantial evidence in support of ALJ's decision and ALJ was not required to further develop the record). "Plaintiff [did] not show that additional evidence was necessary, or that the ALJ's decision was based on insufficient facts." *Isbell v. Colvin*, No. 1:14-CV-6, 2015 WL 1208122, at \*4 (N.D. Tex. Mar. 16, 2015) (citations omitted).

### a. Two state agency medical consultants found Plaintiff was not disabled.

Plaintiff is incorrect that there was no medical opinion evidence to aid in interpreting the raw medical evidence. The ALJ had the benefit of the two SAMCs' opinions.[11] Even though they did not examine Plaintiff, they were qualified to review Plaintiff's medical records, interpret the medical evidence, and render opinions on the effect of Plaintiff's impairments on her ability to work, which they did. The ALJ

---

[10] The Court notes that there are not as many doctor visits in the record as in other social security cases. During the alleged disability period, beginning June 14, 2014 through the end of 2015 (the last visit reflected in the record), Plaintiff apparently went to the doctor eight times. R. 307, 316, 436, 464, 442, 840, 845, 850. Nevertheless, there are sufficient treatment records for the ALJ to make a disability determination, including very detailed treatment notes spanning several pages each as well as records from several visits pre-dating the relevant period.

[11] *See supra*, n.4.

is required to consider the opinions of SAMCs, who "are highly qualified and experts in Social Security disability evaluation." 20 C.F.R. § 404.1513a; *see also* 20 C.F.R. §§ 404.1527(f)(2)(i), 416.927(f)(2)(i).

While the ALJ discounted these two opinions because the doctors did not examine or treat the Plaintiff, the ALJ gave their opinions partial weight and relied on them. R. 18. Even discounted, the SAMCs' opinions constituted substantial evidence in support of the ALJ's decision. *See Kirkwood*, 2015 WL 5714575, at *18.

Because the ALJ relied on medical opinions in making his determination, he did not improperly rely on his own lay opinion. *See Kozlowski v. Colvin*, No. 4:13-CV-20, 2014 WL 948653, at *4-6 (N.D. Tex. Mar. 11, 2014) (rejecting Plaintiff's argument that the ALJ should have obtained a medical source statement and based the RFC on his own lay opinion where ALJ properly relied on RFC assessment by a SAMC), *report and recommendation adopted*, No. 4:13-CV-20 (N.D. Tex. Mar. 11, 2014), ECF No. 29.

### b. Several of Plaintiff's physical examinations were essentially normal.

The ALJ relied heavily on the fact that several of Plaintiff's physical examinations were essentially normal. Plaintiff's medical records reflect diagnoses of degenerative disc disease, obesity, and carpal tunnel syndrome, and some physical

examinations revealed some tenderness and mildly limited range of motion.[12] However, several of her physical examinations also revealed relatively benign findings.[13] *See Manzano v. Berryhill*, No. 4:16-CV-3496, 2018 WL 1518558, at *4 (S.D. Tex. Mar. 28, 2018) (substantial evidence supported the ALJ's denial of benefits where the claimant's physical examinations were essentially normal).

### c. Plaintiff underwent conservative treatment.

The ALJ also relied on the fact that Plaintiff had relatively conservative treatment, primarily taking prescription medications. R. 17. "An impairment controlled by conservative treatment is not disabling." *Murphy v. Colvin*, No. 4:15-

---

[12] June 17, 2014 (R. 307, 309, 312-23); July 9, 2014 (R. 317, 320-21); Apr. 3, 2015 (R. 438); May 4, 2015 (R. 442, 445); Aug. 13, 2015 (R. 844); Nov. 23, 2015 (R. 846); Dec. 11, 2015 (R. 850, 853); *see also* May 17, 2013 (R. 351-52); July 2, 2013 (R. 261-62); Sept. 23, 2013 (R. 273-76); Dec. 2, 2013 (R. 292-93).

[13] June 17, 2014 (R. 307-08) (completely normal physical examination; normal range of motion, no tenderness, and 5/5 motor strength in musculoskeletal system); July 9, 2014 (R. 319-20) (normal gait; normal sensory and motor function and reflexes in the cervical/thoracic areas and lower extremities; negative Spurling's, Lhermitte's, and Hoffman's tests; normal range of motion and no tenderness in shoulders; normal range of motion and no pain in wrist; negative Waddell's test); Apr. 3, 2015 (R. 437) (completely normal physical examination; normal range of motion and no tenderness in musculoskeletal system; 5/5 motor strength and no muscle wasting or fasciculations in musculoskeletal system); May 4, 2015 (R. 445) (full range of motion of elbow, forearm and wrist without instability; negative Tinel's test; no evidence of lumbosacral or cervical radiculopathy); Aug. 13, 2015 (R. 844) (normal range of motion in musculoskeletal system); Dec. 11, 2015 (R. 853) (5/5 motor strength bilaterally; normal deep tendon reflexes; no fasciculations; normal gait; *see also* May 17, 2013 (R. 351) (normal range of motion in neck; normal coordination and gait; ability to move easily from chair to exam table not restricted); July 2, 2013 (R. 260) (normal range of motion in neck; normal coordination and gait; ability to move easily from chair to exam table not restricted); Sept. 23, 2013 (R. 275) (decreased range of motion in right knee but the knee nevertheless moves well; normal gait); Dec. 2, 2013 (R. 290-91) (physical examination was completely normal; normal range of motion in neck; no tenderness in musculoskeletal system; normal coordination and gait; her ability to easily move from chair to exam table not restricted).

CV-1153, 2016 WL 7736657, at *10 (S.D. Tex. Aug. 19, 2016) (citing *Taylor v. Bowen*, 782 F.2d 1294, 1298 (5th Cir. 1986)). On two occasions, Plaintiff received injections in her gluteal area and knee.[14] On several occasions, doctors recommended physical therapy for her spinal impairments, and injections and surgery for her carpal tunnel syndrome.[15] However, the records do not reflect that Plaintiff followed these recommendations.[16] District courts in the Fifth Circuit have previously recognized that the ALJ is permitted to rely on this to weigh the claimant's credibility.[17]

> **d.** **The ALJ did not err in finding Plaintiff underwent conservative treatment.**

Plaintiff argued the ALJ erred in discounting Plaintiff's credibility on the basis

---

[14] Sept. 23, 2013 (R. 273); Aug. 13, 2015 (R. 840).

[15] July 9, 2014 (R. 321); May 4, 2015 (R. 445); Nov. 7, 2016 (R. 42); *see also* Sept. 23, 2013 (R. 274).

[16] While the ALJ appears not to have relied on this, the Court notes that Plaintiff's doctors also repeatedly recommended she exercise, and she apparently did not follow this recommendation either. R. 352 (May 17, 2013); 259 (July 2, 2013); 276 (Sept. 23, 2013); 292-93 (Dec. 2, 2013); 321 (July 9, 2014).

[17] *See Dickson v. Colvin*, No. 7:14-CV-95, 2015 WL 12552002, at *10-11 (S.D. Tex. June 25, 2015) (affirming denial of benefits where claimant received conservative and routine treatment), *report and recommendation adopted*, 2015 WL 12551942 (S.D. Tex. July 17, 2015); *see also Malveaux v. Comm'r of Soc. Sec.*, No. 6:15-CV-2728, 2017 WL 1238010, at *8 (W.D. La. Mar. 13, 2017) (affirming denial of benefits where claimant received nothing more than routine and/or conservative treatment for back pain; was not compliant with prescribed medications; and doctor ordered he become more active, which the claimant failed to follow), *report and recommendation adopted*, 2017 WL 1225968 (W.D. La. Mar. 29, 2017); *Taylor v. Comm'r of Soc. Sec.*, No. 14-2563, 2015 WL 10401114, at *10-11 (W.D. La. Dec. 30, 2015) (affirming denial of benefits where claimant with degenerative disc disease and other conditions failed to take medication as prescribed and follow-up with treatment recommendations; treatment was conservative and routine; and the claimant did not receive the type of treatment one would expect for a totally disabled person, such as intensive physical therapy, steroid injections, and surgeries), *report and recommendation adopted*, 2016 WL 902579 (W.D. La. Mar. 3, 2016).

of Plaintiff's alleged non-compliance with treatment recommendations. ECF No. 15 at 1. Plaintiff argued the ALJ was obligated to make findings as to whether Plaintiff ceased compliance with treatment, whether the treatment would restore Plaintiff's ability to work, and whether Plaintiff had a permitted reason to stop treatment. ECF No. 15 at 1-2. Plaintiff alleges treatment by prescription medication is still treating, and that the ALJ improperly second-guessed claimant's treating doctors. ECF No. 15 at 2 n.2.

### i. *Plaintiff failed to pursue recommended treatment.*

First, the ALJ did not base his credibility determination on a contention that Plaintiff ceased all treatment, only that she did not pursue additional treatment options that her own doctors recommended. R. 17. Indeed, several cases have found this is a valid justification for discounting Plaintiff's credibility.[18] Plaintiff did not cite any contrary authority. Furthermore, the ALJ was not substituting his own opinion for that of her treating doctors. He cited Plaintiff's treatment records, which unequivocally show that her own doctors recommended she pursue physical therapy, injections, and surgery. R. 17, 42, 274, 321, 445.

### ii. *Plaintiff's doctors specifically recommended additional treatment options.*

Regarding Plaintiff's second point—whether treatment would restore ability

---

[18] *See supra*, n.17.

to work—Plaintiff relies on the following regulation in addition to *Frey v. Bowen*:

> (a) … In order to get benefits, you must follow treatment prescribed by your medical source(s) if this treatment is expected to restore your ability to work. (b) … If you do not follow the prescribed treatment without a good reason, we will not find you disabled or, if you are already receiving benefits, we will stop paying you benefits.

20 C.F.R. § 404.1530. *Frey* is factually distinguishable. In *Frey*, the Tenth Circuit reversed the ALJ's decision because the ALJ ignored testimony of Plaintiff's treating doctors that the claimant could not be prescribed arthritis medications, which could have mitigated the limitations caused by the claimant's arthritis, because the medications had severe side effects. 816 F.2d 508, 517 (10th Cir. 1987). Ignoring this testimony, the ALJ relied on the claimant's failure to take pain medication to deny benefits. *Id.* In stark contrast here, Plaintiff's doctors prescribed pain medications and recommended numerous treatment options including physical therapy, injections, and surgery, that would likely help treat her conditions.[19] *See, e.g.*, *Johnson v. Astrue*, No. H-10-422, 2010 WL 5437262, at *15-16 (S.D. Tex. Dec. 27, 2010) (distinguishing *Frey v. Bowen*). Plaintiff has not pointed to any evidence suggesting these treatment options would not have been effective.

---

[19] While Plaintiff reported side effects of pain medications in her disability and function reports, R. 178, 202, the medical records do not indicate Plaintiff ever complained to her doctors about side effects of any medications.

### iii. Plaintiff offered no valid justification for ignoring her doctor's recommendations.

Plaintiff has not established a valid justification, even on appeal, as to why she did not pursue these additional treatment options. The regulation Plaintiff relies on provides some examples of good reasons for not following prescribed treatment.[20] 20 C.F.R. § 404.1530(c). None of these apply to Plaintiff's circumstances, nor does she attempt to argue that they do. *See, e.g.*, *Johnson*, 2010 WL 5437262, at *15.

Beyond these, if a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." *Rouner v. Colvin*, No. H-13-2823, 2015 WL 1289794, at *15 (S.D. Tex. Mar. 20, 2015) (quoting *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987)); *see also* Soc. Sec. Ruling 16-3P Titles II & XVI: Evaluation of Symptoms in Disability Claims, 2017 WL 5180304, at *9-10 (S.S.A. Oct. 25, 2017) ("SSR 16-3p"). However, Plaintiff does not actually argue that this circumstance applies to her, nor does she point to any evidence in the record indicating she is indigent.

The Court notes that there is a single reference in the medical records that on April 3, 2015, Plaintiff did not pursue physical therapy "due to the cost." R. 436. However, Plaintiff did not raise this during the hearing or point to this or similar

---

[20] These include religious objections, a history of surgery with unsuccessful results, the treatment is of a significant magnitude or is very risky for the claimant (e.g., open heart surgery), or the treatment involves amputation of an extremity.

evidence on appeal. *See Tate v. Colvin*, No. 13-6552, 2014 WL 4982662, at *17-18 (E.D. La. Oct. 6, 2014) (rejecting claimant's argument that ALJ improperly relied on noncompliance with treatment to discount claimant's credibility, where Plaintiff did not testify she could not afford treatment and the medical records contain only one instance when she told a provider that she could not afford treatment). Even if the Court infers from this that she is indigent, this is called into question to some extent by the fact that on August 13, 2015, she received an injection in her left gluteal area for pain, but none to her wrist. R. 840.

Consistent with the requirements of SSR 16-3p, the ALJ also specifically asked Plaintiff during the hearing why she did not pursue surgery for her wrist (and whether she was using pain medication). R. 38-39, 42; *see* SSR 16-3p, 2017 WL 5180304, at *9. Plaintiff testified she did not pursue surgery due to fear and made no mention of cost. R. 42-43. Fear is not an excusable reason.[21] *See, e.g.*, SSR 16-3p, 2017 WL 5180304, at *9-10.

---

[21] While the ALJ did not specifically rely on this in his written opinion, the Court also notes there is conflicting evidence regarding Plaintiff's use of pain medication in the record. There are some references to her regularly taking her pain medication. R. 180, 196, 202. On the other hand, there are some references in the record that she was not taking prescribed pain medication. R. 38-39, 41-42, 436. She testified that she cannot take pain medication with her anticoagulant medication because she is "scared that it might cause bleeding and [she] won't know that [she's] bleeding on the inside." R. 42. However, her treatment records show her doctors regularly prescribed pain medication in addition to her anticoagulant medication. R. 310-11 (June 17, 2014); 318 (July 9, 2014), 439 (Apr. 3, 2015); 443, 447 (May 4, 2015); 841-42 (Aug. 13, 2015); 848 (Nov. 23, 2015); 853 (Dec. 11, 2015). Thus, her explanation that she is unable to take pain medication is unsupported by the objective medical evidence.

Furthermore, in cases where courts have recognized that inability to afford treatment was a valid justification, the claimant testified to that or placed adequate supporting evidence into the record.[22] Such evidence is absent. The record supports the ALJ's finding that Plaintiff received only conservative and routine treatment, and the ALJ's reliance on this in his credibility determination.

### 3. The ALJ was not required to obtain an updated medical opinion.

Plaintiff further argues that SSR 96-6p requires the ALJ to seek an updated medical opinion or testimony from a medical expert when there is new evidence that post-dates the SAMCs' opinions that may bear on Listing equivalency and Plaintiff's RFC. ECF No. 12 at 6-7; ECF No. 15 at 5-6.

However, courts in this district have rejected this argument several times, noting that "when additional medical evidence is received that *in the opinion of the ALJ* may change the State agency medical …. consultant's findings, an updated medical opinion regarding disability is required." *Ybarra v. Colvin*, No. 4:13-CV-

---

[22] *See Barrera v. Colvin*, No. 2:17-CV-14, 2017 WL 4119283, at *12 (S.D. Tex. Aug. 15, 2017) (reversing denial of benefits where claimant testified at the hearing and repeatedly told her doctor that she could not afford medications, and alleged she was trying to enroll in an indigent program to obtain low-cost or free medications), *report and recommendation adopted*, 2017 WL 4100010 (S.D. Tex. Sept. 15, 2017); *see also Porter v. Colvin*, No. 12-768, 2014 WL 1330279, at *6 (M.D. La. Mar. 31, 2014) (reversing denial of benefits because the claimant offered uncontroverted testimony that he could not afford medical treatment, is unable to pay outstanding medical bills, has been turned away by his medical providers, and has no transportation). Even if cost is an issue for Plaintiff, and she could show she would otherwise be entitled to benefits, Plaintiff must also establish she has no other way of obtaining treatment, such as through charitable services. *See, e.g.*, *Rouner*, 2015 WL 1289794, at *15.

3720, 2015 WL 222330, at *7, n.5 (S.D. Tex. Jan. 14, 2015) (emphasis in original) (citing Soc. Sec. Ruling 96-6p, Titles II & XVI: Consideration of Admin. Findings of Fact by State Agency Med. & Psychological Consultants & Other Program Physicians & Psychologists at the Admin. Law Judge & Appeals Council, 1996 WL 374180, at *4 (S.S.A. July 2, 1996); *Brister v. Apfel*, 993 F. Supp. 574, 577 n.2 (S.D. Tex. 1998)) (collecting cases); *accord Malone v. Colvin*, No. H-13-3043, 2015 WL 1291824, at *14-15 (S.D. Tex. Mar. 16, 2015). Thus, whether to seek an updated medical opinion is within the ALJ's discretion. *Id.*; s*ee also* 20 C.F.R. § 404.1526(e)(3) ("[T]he responsibility for deciding medical equivalence rests with the [ALJ]…."); *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012) ("[T]he determination of [RFC] is the sole responsibility of the ALJ.") (citing *Ripley*, 67 F.3d at 557). Likewise, it is discretionary for an ALJ to ask for the opinion of a medical expert at a hearing. *Malone*, 2015 WL 1291824, at *15.

The ALJ had the benefit of the SAMCs' opinions, which both addressed equivalency to the Listings and Plaintiff's RFC. Plaintiff herself does not identify which new evidence requires an updated medical opinion. The Court notes that after the SAMCs issued their opinions on March 30, 2015 and June 2, 2015 respectively, Plaintiff appeared for three more medical visits for continuing treatment of her already diagnosed conditions of degenerative disc disease and carpal tunnel syndrome, and treatment notes and findings were substantially similar to earlier ones

pre-dating the SAMCs' opinions.[23] There was nothing in those records that was substantially new that required a doctor to review the records again, and Plaintiff has not shown they contain information that would change the outcome. Thus, the ALJ was not required to obtain an updated medical opinion. *See Ybarra*, 2015 WL 222330, at *7. Furthermore, there is other substantial evidence supporting the ALJ's decision. *See supra*, Section III.B.2; *see also Malone*, 2015 WL 1291824, at *15.

### 4. The ALJ was not required to further develop the record and Plaintiff failed to meet her own burden to show she is disabled.

"Although the Court recognizes that evidence has been presented on both sides, the ALJ's decision must be affirmed if substantial evidence supports it." *Tant v. Colvin*, No. 6:12-CV-134, 2015 WL 363842, at *3 (W.D. Tex. Jan. 27, 2015), *report and recommendation adopted*, No. 6:12-CV-134 (W.D. Tex. Mar. 2, 2015), ECF No. 21. The standard of review is very limited, and substantial evidence is a low standard. The Court cannot reverse the Commissioner's decision because this Court might have reached a different conclusion or weighed the evidence differently. Even though Plaintiff argues the ALJ applied numerous incorrect standards, this case essentially comes down to whether substantial evidence supports the ALJ's decision. "Without re-weighing the evidence or substituting its own judgment, and in consideration of the deference afforded to the ALJ, this Court concludes that there

---

[23] Aug. 13, 2015 (R. 840); Nov. 23, 2015 (R. 845); Dec. 11, 2015 (R. 850).

was sufficient evidence to support the ALJ's credibility finding, and subsequently the ALJ's final decision that Plaintiff was not disabled." *Id*.

Plaintiff has the burden in the first instance to prove she is disabled, and to obtain sufficient medical evidence showing she is disabled. *See Manzano*, 2018 WL 1518558, at *7 (citing *Anthony v. Sullivan*, 954 F.2d 289, 293 (5th Cir. 1992)); *Kirkwood*, 2015 WL 5714575, at *17 (citing *Gonzalez v. Barnhart*, 51 F. App'x 484, at *1 (5th Cir. 2002)). Plaintiff failed to meet this burden. She never sought a medical source statement from a treating doctor, she never sought a consultative examination, she never asked for an opportunity at the administrative level to supplement the record, and she never raised a concern at the administrative level that she is indigent. Plaintiff cannot place the full burden on the ALJ.

### 5. Plaintiff failed to show prejudice.

Even if the ALJ should have developed the record further, reversal is appropriate only if the Plaintiff can show she was prejudiced by this failure. *Anderson v. Colvin*, No. 4:13-CV-1622, 2014 WL 1052442, at *6 (S.D. Tex. Mar. 18, 2014) (citing *Carey*, 230 F.3d at 142). "To establish prejudice, a claimant must demonstrate that he or she 'could and would have adduced evidence that might have altered the result.'" *Id*. (citations omitted).

Plaintiff has not shown prejudice or pointed to new evidence that would have

changed the ALJ's decision.[24] "A mere allegation that beneficial evidence might have been gathered had the error not occurred is insufficient to meet this burden." *Manzano*, 2018 WL 1518558, at \*9 (quoting *Jones v. Astrue*, 691 F.3d 730, 734-35 (5th Cir. 2012)). Therefore, Plaintiff failed to show reversal is necessary.

### C. The ALJ Was Not Required To Order A Consultative Examination.

Plaintiff argues that the ALJ further failed to develop the record by failing to order a consultative examination. ECF No. 12 at 7.

The ALJ is not required to order a consultative examination "unless the record established that such an examination is necessary to enable the [ALJ] to make the disability decision." *Manzano*, 2018 WL 1518558, at \*9 (quoting *Anderson v. Sullivan*, 887 F.2d 630, 634 (5th Cir. 1989)).

> The regulations provide that when the information needed 'is not readily available from the records of [a claimant's] medical treatment source, or [the Administration is] unable to seek clarification from [the claimant's] medical source, [the Administration] will ask [the claimant] to attend one or more consultative examinations at [the Administration's] expense.

*Case*, 2014 WL 4386736, at \*8 (quoting 20 C.F.R. §§ 404.1512(e), 416.912(e)). The ALJ's decision to order such an examination is discretionary. *Manzano*, 2018 WL 1518558, at \*9 (citing *Wren v. Sullivan*, 925 F.2d at 123, 128 (5th Cir. 1991); *Roberts*

---

[24] *Cf. Bagwell v. Astrue*, No. 3:09-CV-79, 2010 WL 1848933, at \*2-3 (N.D. Miss. May 6, 2010) (reversing denial of benefits because the ALJ failed to develop the record and Plaintiff produced a medical source statement by her treating physician to the Appeals Council which was material and might have changed the outcome).

*v. Colvin*, 946 F. Supp. 2d 646, 660 (S.D. Tex. May 24, 2013)). When the record already contains enough substantial evidence for the ALJ to make a determination, the ALJ is not required to order a consultative examination. *Kirkwood*, 2015 WL 5714575, at *18.

Here, the Court already concluded there is other substantial evidence in the record supporting the ALJ's decision and the ALJ did not need to obtain a medical source statement or otherwise further develop the record. *See supra,* Section III.B. The Court likewise concludes a consultative examination was not necessary for the ALJ to make a disability determination. *See Kirkwood*, 2015 WL 5714575, at *18 (even though there was no medical source opinion by an examining or treating doctor, ALJ did not err by not ordering a consultative examination because there was other substantial evidence in the record). In addition, there is no indication that Plaintiff or her counsel sought or requested a consultative examination at any point throughout the claims process or from the ALJ. *See Manzano*, 2018 WL 1518558, at *9 (ALJ did not err in not ordering a consultative examination in part because claimant did not request one) (collecting cases).

### D. The ALJ Properly Considered Plaintiff's Complaints Of Pain.

Plaintiff argued that the ALJ erred in failing to consider her non-exertional impairment of pain and its effect on her ability to work. ECF No. 12 at 7-8.

"[T]he mere fact that working may cause a claimant pain or discomfort does

not mandate a finding of disability." *Brown v. Astrue*, No. H-08-3011, 2010 WL 985847, at \*10 (S.D. Tex. Mar. 16, 2010) (citing *Hames v. Heckler*, 707 F.2d 162, 166 (5th Cir. 1983)). "The suffering of some impairment does not establish disability; a claimant is disabled only if she is 'incapable of engaging in any substantial gainful activity.'" *Manzano*, 2018 WL 1518558, at \*7 (quoting *Anthony*, 954 F.2d at 293). "How much pain is disabling is a question for the ALJ since the ALJ has primary responsibility for resolving conflicts in the evidence." *Id.* at \*8 (quoting *Gray v. Astrue*, No. 1:09-CV-101, 2011 WL 856941, at \*4 (N.D. Tex. Mar. 11, 2011)).

A review of the ALJ's decision shows he considered her complaints of pain. He summarized her complaints that she had problems lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, and using her hands; she has back and neck pain preventing her from sitting at a computer all day; she has tingling in her hands; and her toes go numb. R. 17. He also recognized that some of her physical examinations revealed pain and tenderness. R. 17-18.

Nevertheless, the ALJ found Plaintiff's statements concerning the intensity, persistence, or limiting effects of her symptoms were not entirely credible. R. 17; *see Manzano*, 2018 WL 1518558, at \*8. The ALJ noted evidence in the record that was inconsistent with Plaintiff's subjective complaints of pain, including some physical examinations during which she exhibited no pain or tenderness. R. 17-18.

23

He also noted she did not seek more extensive treatment such as physical therapy, injections, and surgery which may have treated her conditions and related pain. R. 17. "[A] claimant's subjective complaints of pain must be corroborated by objective medical evidence." *Manzano*, 2018 WL 1518558, at *8 (citing *Adams v. Bowen*, 833 F.2d 509, 512 (5th Cir. 1987)). "Subjective evidence need not be credited over conflicting medical evidence." *Id*. (quoting *Anthony*, 954 F.2d at 295). Since there is conflicting medical evidence, this constitutes substantial evidence in support of the ALJ's determination that her pain is not so severe as to render Plaintiff completely unable to perform any substantial gainful activity.

### E. The ALJ Properly Evaluated Plaintiff's Credibility.

Plaintiff argued the ALJ failed to conduct a meaningful evaluation of her credibility. ECF No. 12 at 8-9.

"It is within the ALJ's scope of authority to find that not all of Plaintiff's testimony was completely credible. The task of weighing the evidence is the province of the ALJ, not of this court." *Manzano*, 2018 WL 1518558, at *8 (citing *Chambliss v. Massanari*, 269 F.3d 520, 523 (5th Cir. 2001)). The Social Security regulations identify a non-exclusive list of factors the ALJ may consider to evaluate the intensity, persistence, and limiting effects of an individual's symptoms, including treatment other than medication an individual receives or has received for

relief of pain or other symptoms. SSR 16-3p, 2017 WL 5180304, at *7-8.[25] The ALJ need only consider those factors pertinent to the evidence in the record and may also consider other factors as relevant. *Id*. The ALJ will also consider whether an individual's statements about the intensity, persistence, and limiting effects of symptoms are inconsistent with the objective medical evidence in his determination of the impact of these symptoms on the claimant's ability to work. *Id*. at *8.

Though the ALJ did not explain his credibility determination with a high level of formality, a review of the ALJ's decision shows he considered these issues consistent with the regulation. The ALJ explained there was contrary evidence in the record, including normal physical examinations and evidence that Plaintiff received conservative treatment. R. 17-18. These are valid justifications for the ALJ to find the Plaintiff's allegations of the severity of her symptoms were not wholly supported by the record. *See* SSR 16-3p, 2017 WL 5180304, at *7-8. Moreover, "the ALJ had the opportunity to observe Plaintiff's demeanor at the hearing and to assess the credibility of her subjective complaints of pain in light of the other evidence in the record[,]" which the reviewing court did not. *Dickson*, 2015 WL 12552002, at *12.

In addition, the Court already found substantial evidence nevertheless supports the ALJ's decision. "[A] factfinder's evaluation of the credibility of

---

[25] Plaintiff relies on SSR 96-7p, which is outdated and has been rescinded and superseded by SSR 16-3p. ECF No. 12 at 9.

subjective complaints is entitled to judicial deference if supported by substantial record evidence." *Tant*, 2015 WL 363842, at \*3 (quoting *Villa*, 895 F.2d at 1024).

### F. The ALJ Properly Incorporated The Impairments He Recognized Into The RFC And Hypothetical Questions To The Vocational Expert.

Plaintiff argued that the ALJ erred by failing to incorporate consideration of all of her impairments into the RFC and into the hypothetical questions he asked the VE. ECF No. 12 at 9-10.

#### 1. The ALJ considered all of Plaintiff's impairments in formulating the RFC.

"The ALJ is not required to incorporate limitations in the RFC that he did not find to be supported in the record." *Dismuke*, 2015 WL 464397, at \*4 (affirming ALJ's finding that claimant with degenerative disc disease and other impairments could perform a limited range of light work) (citing *Morris*, 864 F.2d at 336).

In the ALJ's discussion of the RFC, he explained that Plaintiff alleged chronic back pain, right lumbar radiculitis, facet arthropathy in the lumbar spine, bilateral hand numbness, carpal tunnel, and shortness of breath. R. 17. He summarized her subjective complaints of her symptoms and pain. R. 17. He also discussed in depth her history of carpal tunnel syndrome, degenerative disc disease, and obesity, as well as treatment notes and diagnostic test results evidencing the existence of these conditions. R. 17. He recognized that some of her physical examinations revealed pain and tenderness, that each of her medical conditions are borne out by the medical

evidence, and that each of these would impact her physical abilities. R. 17-18. However, he did not find that they are so severe as to be disabling and discussed other evidence he relied on in reaching this conclusion. R. 17-18.

Accordingly, the Court would strain itself to find the ALJ did not consider these impairments. The ALJ included postural and manipulative limitations in the RFC, limiting Plaintiff to lifting 20 pounds occasionally and 10 pounds frequently; no climbing of ladders, ropes, or scaffolds; occasional stooping and crouching; and frequent handling and fingering. R. 16; *see, e.g.*, *Walker v. Colvin*, No. H-12-2463, 2014 WL 4167017, at *3 n.2 (S.D. Tex. Aug. 20, 2014) (RFC properly incorporated postural limitations resulting from degenerative disc disease such as not being able to climb ladders, ropes, or scaffolds and occasionally stooping and crouching); *see also Daniels-Davis*, 2014 WL 3955617, at *6-7. It is apparent he considered, but discounted Plaintiff's allegations as to their severity.[26]

## 2. The ALJ incorporated all of Plaintiff's impairments into hypothetical questions to the vocational expert.

"The ALJ is not required to incorporate limitations into the hypothetical questions to the [VE] that [he] did not find to be supported in the record." *Manzano*,

---

[26] As to Plaintiff's history of pulmonary embolism, the Court has found no indication in the record, and Plaintiff has pointed to none, indicating this has any impact on Plaintiff's ability to work or is not controlled by medication. During the hearing, she testified she had a reoccurrence of this only once because she had stopped taking her anticoagulant medication. R. 40. After the reoccurrence she was advised to continue taking her medication, and she testified that she is compliant. R. 41.

2018 WL 1518558, at *12 (quoting *Gray*, 2011 WL 856941, at *8). A review of the hearing transcript shows the ALJ incorporated Plaintiff's limitations in the hypothetical questions to the extent he believed they were supported by the record.[27] *See id.* at *11. Thus, he committed no error.

The ALJ asked the VE questions about how various levels of limitations—including manipulative limitations, ability to stand and walk, and ability to lift weight—would affect Plaintiff's ability to work. The ALJ asked the VE to assume a hypothetical person with the same age, education, and work history of the claimant who is limited to sitting six hours in an eight-hour work day; standing and walking six hours in an eight hour work day; lifting 20 pounds occasionally; lifting 10 pounds frequently; no climbing of ladders, ropes, or scaffolds; occasionally stooping and crouching; and frequently handling and fingering (2/3 of a day).[28] R. 51. The VE testified that such a person could perform Plaintiff's past work. R. 51.

The ALJ asked the VE to further assume the same hypothetical person was limited to sitting six hours; standing and walking no more than two hours; lifting 10 pounds occasionally; no climbing ladders, ropes, and scaffolds; occasionally

---

[27] Plaintiff also implies that hypothetical questions to the VE must consider the effect of her mental limitations. ECF No. 12 at 9. However, Plaintiff has not alleged any mental limitations and did not file for disability on the basis of any mental limitations.

[28] *See Simoneaux*, 2010 WL 3717291, at *5 ("frequent" handling and fingering means up to 2/3 of a day).

stooping and crouching; and frequent handling and fingering. R. 51. The VE testified that such a person could not perform Plaintiff's past work. R. 51. The ALJ asked the VE whether the Plaintiff has transferable skills from past work that would enable the hypothetical person with the same limitations to perform other work. R. 51. The VE responded in the affirmative and testified such jobs include appointment clerk, receptionist, and information clerk, which are all sedentary. R. 52. The ALJ asked the VE if the same hypothetical person could perform these jobs if he lowered the manipulative limitations to occasional handling and fingering (1/3 of a day).[29] R. 52. The VE testified that with that added limitation, only the job of information clerk would remain. R. 52-53. Thus, the ALJ reasonably incorporated the limitations he recognized into the hypotheticals.

While the Court agrees that Plaintiff suffers from some limitations, the ALJ's conclusion that Plaintiff's limitations are consistent with the first hypothetical is supported by substantial evidence. *See Simoneaux*, 2010 WL 3717291, at *6. The limitations the ALJ recognized allow Plaintiff to perform her past work, or at least other sedentary work, as the VE testified. *See id*. The hypothetical questions to the ALJ were proper and the ALJ was entitled to rely on them.

### 3.  Plaintiff failed to show prejudice.

"Even if the ALJ did not incorporate all of Plaintiff's alleged limitations in

---

[29] *See id*. ("occasional" handling and fingering means up to 1/3 of a day).

the hypothetical, Plaintiff was not prejudiced because she was represented by an attorney who cross-examined the [VE] and whose questions incorporated additional limitations claimed by the Plaintiff." *Manzano*, 2018 WL 1518558, at *12 (citing *Roberts*, 946 F. Supp. 2d at 662). In this case, Plaintiff's attorney had a fair opportunity to correct any deficiencies in the ALJ's hypothetical and asked hypothetical questions incorporating additional limitations. R. 53-54. He incorporated into his hypothetical questions additional limitations pertaining to Plaintiff's degenerative disc disease, her inability to maintain a sitting position for long periods of time, her need for breaks, and more severe manipulative limitations.[30] This cured any potential prejudice resulting from the ALJ's potentially incomplete hypothetical. Thus, any error was harmless and not reversible. The ALJ ultimately determined Plaintiff was not as limited as suggested by these additional hypotheticals and there is sufficient support in the record for this finding.

---

[30] The attorney asked the VE to assume the ALJ's first hypothetical, and because of degenerative changes in the neck the person is only able to sit at a computer for 15-20 minutes at a time; every 15-20 minutes she needs a 5-10 minute period to get up and walk around or move her head; and during that 5-10 minute period she could do filing or other work in a different position but nevertheless would not be sitting at the work station. R. 53. The VE testified that such a person could not do Plaintiff's past work but could work as a receptionist or information clerk. R. 54. The VE further clarified that, even with the additional limitations regarding the person's neck and occasional handling and fingering, the hypothetical person could still work as an information clerk. R. 54. Thus, even to the extent the ALJ recognized these additional limitations, the VE's testimony would still preclude a finding of disability. The attorney further asked the VE to assume that the person described in the ALJ's third hypothetical which permits occasional handling and fingering, because of flare ups in symptoms, is prohibited from using her hands so much that four or five days a month she is limited to 10% handling and fingering, particularly with the right dominant hand. R. 54. The VE testified that this claimant would not be able to maintain employment. R. 54.

## IV.
## CONCLUSION

For the foregoing reasons, the Commissioner's motion for summary judgment is **GRANTED**, and Ms. Wycoff's motion for summary judgment is **DENIED**. Ms. Wycoff's claims are **DISMISSED with prejudice**.

Signed on February 19, 2019, at Houston, Texas.

_____
Dena Hanovice Palermo
United States Magistrate Judge